THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| **ALEXANDRIA WILLIAMS,** ) <br> ) <br> On Behalf of Herself and ) <br> All Others Similarly Situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> **G4S SECURE SOLUTIONS (USA)** ) <br> **INC.,** ) <br> ) <br> Defendant. ) | Case No.: 1:17-cv-00051 <br><br> **JURY TRIAL DEMANDED** |

## FLSA COLLECTIVE AND RULE 23 CLASS ACTION COMPLAINT

Plaintiff, on behalf of herself and all others similarly situated, brings this action against Defendant G4S Secure Solutions (USA) Inc. ("G4S" or "Defendant") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and North Carolina wage and hour laws, N.C.G.S. § 95-25.1, *et seq*. ("North Carolina Wage and Hour Act" or "NCWHA").

## NATURE OF THE ACTION

1. Plaintiff alleges on behalf of herself and all other similarly situated non-exempt, hourly security officers of Defendant who elect to opt into this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Action Members"), that they are (i) entitled to unpaid wages including overtime premiums for all hours worked exceeding forty (40) in a workweek, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201, *et seq.*, specifically 29 U.S.C. §§ 207, 216(b).

1

2. Plaintiff further complains, pursuant to Fed. R. Civ. P. 23, on behalf of herself and a class of other similarly situated non-exempt, hourly security officers employed by Defendant within the state of North Carolina (the "North Carolina Class"), that they are entitled to all unpaid straight time, plus interest, liquidated damages, costs and fees and penalties as allowed by the North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1, *et seq*.

3. Plaintiff further complains, on her own behalf, pursuant to FLSA, 29 U.S.C. § 215(a)(3) and 216(b), that she is entitled to reinstatement, lost wages, and damages, including liquidated damages, fees, and costs for Defendant's retaliation against her.

## JURISDICTION AND VENUE

4. The FLSA authorizes court actions by private parties to recover damages for violations of the FLSA's wage and hour provisions. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 since they are part of the same case and controversy as the FLSA claim. The state and federal claims derive from a common nucleus of operative fact, the state law claims will not substantially dominate over the FLSA claim, and exercising supplemental jurisdiction would be in the interests of judicial economy, convenience, fairness, and comity.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because substantial decisions and events giving rise to the claims occurred in this jurisdiction.

7. The United States District Court for the Middle District of North Carolina has personal jurisdiction because Defendant conducts business within this District, and Defendant's regional management employees, to whom Plaintiff Williams reported, from whom she received her job assignments, and who failed and refused to place Plaintiff Williams in a comparable job

assignment following Defendant's retaliatory removal of Plaintiff Williams from the Google Data Center job assignment, are located within this District in Greensboro, Guilford County, North Carolina.

8. At all relevant times, Defendant has been an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendant employed "employee[s]," including Plaintiff Alexandria Williams, and those persons similarly situated as described herein. At all relevant times, Plaintiff and the other members of the putative classes were engaged in commerce and/or worked for Defendant in an enterprise engaged in commerce. At all relevant times, Defendant had gross annual operating revenue in excess of $500,000.00 (Five Hundred Thousand Dollars).

## PARTIES

9. Defendant G4S Secure Solutions (USA) Inc. is a Florida for-profit corporation with its headquarters and principle place of business located at 1395 University Boulevard, Jupiter, Florida 33458.

10. "G4S is the largest security solutions company in the United States." "G4S focuses on advancing the safety and security of businesses and governments, ensuring the security of key assets — people, property, products and reputation." In that regard, G4S operates throughout the United States, providing physical security services to commercial businesses, government entities, gated communities, industrial complexes, and many other clients. As of the filing date of this Complaint, "[i]n North America, G4S has more than 54,000 employees and more than 7,400 customers." *See* G4S website: http://g4s.us (last visited January 4, 2017).

11. G4S employs Security Officers throughout the United States, including in North Carolina, to provide on-site security services to its clients. G4S Security Officers "patrol and inspect property to protect against fire, theft, vandalism, terrorism, and illegal activity." They "use various forms of communications and [are] expected to write reports outlining observations and activities during assigned shifts." *See* G4S website: http://g4s.us (last visited January 4, 2017).

12. Plaintiff Alexandria Williams was, at all relevant times, an individual residing in Hudson, Caldwell County, North Carolina.

13. At all relevant times, Plaintiff Williams was employed by G4S in Lenoir, North Carolina, as a Security Officer, an hourly, non-exempt position. Plaintiff Williams's Consent to Become a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is attached hereto as **Exhibit 1**.

## COLLECTIVE ACTION ALLEGATIONS

14. Plaintiff Williams brings Count I, the FLSA off-the-clock claim, as an opt-in action pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following persons:

> All hourly, non-exempt Security Officers, regardless of actual title, who worked for Defendant during the last three years at any one or more of the following client sites: Google Data Center (Lenoir, NC); Whiting Turner (Lenoir, NC); J.E. Dunn (Lenoir, NC); Frye Hospital (Hickory, NC); Fiserv (Hickory, NC); Mission Hospital (Asheville, NC); and General Electric (West Jefferson, North Carolina) ("Off-the-Clock Collective Action Members").

15. Plaintiff, on behalf of herself and all other similarly situated hourly, non-exempt Security Officers, seeks relief on a collective basis challenging Defendant's practice of failing to accurately record work time and pay its employees for all hours worked, including overtime

premiums. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendant's records, and potential Collective Action Members may easily and quickly be notified of the pendency of this action.

16. Plaintiff is similarly situated to the Off-the-Clock Collective Action Members because, upon information and belief, (i) all are subject to similar payroll policies and procedures, which require but fail to pay for all hours worked, including pre-shift and post-shift work, and (ii) all utilize Defendant's time recording and reporting practices, which fail to account and pay for all time worked.

17. Plaintiff will fairly and adequately protect the interests of the Off-the-Clock Collective Action Members, and has retained counsel that is experienced and competent in the fields of wage and hour law and class action litigation. Plaintiff has no interest that is contrary to or in conflict with those members of this collective action.

18. Plaintiff brings Count II, the NCWHA claim, as a Rule 23 class action on behalf of herself and the following persons:

> All hourly, non-exempt Security Officers, regardless of actual title, who worked for Defendant during the last two years at any one or more of the following client sites: Google Data Center (Lenoir, NC); Whiting Turner (Lenoir, NC); J.E. Dunn (Lenoir, NC); Frye Hospital (Hickory, NC); Fiserv (Hickory, NC); Mission Hospital (Asheville, NC); and General Electric (West Jefferson, NC) ("NCWHA Class Members").

19. Plaintiff's Rule 23 class claim (Count II) satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

20. Plaintiff's Rule 23 state law class claim (Count II) satisfies the numerosity requirement of a class action. The NCWHA Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of potential class members is unknown, and the facts for calculating that number are presently within the sole control of Defendant, upon information and belief, there are more than one hundred (100) Class members.

21. Questions of law and fact common to the NCWHA Class Members predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all NCWHA Class Members. Among the questions of law and fact common to Plaintiff and the NCWHA Class Members are:

   a. whether Defendant employed the NCWHA Class Members within the meaning of North Carolina wage and hour laws;

   b. whether Defendant owes the NCWHA Class Members their agreed hourly rate in exchange for all work performed, including pre-shift and post-shift work, as a term and condition of their employment;

   c. whether Defendant unlawfully failed to accurately record and pay for all hours worked, including pre-shift and post-shift work, performed by the NCWHA Class Members;

   d. whether Defendant's time reporting practices prohibited the NCWHA Class Members from reporting all pre-shift and post-shift work on their timesheets used to calculate and process payroll checks;

   e. whether Defendant failed to pay the NCWHA Class Members their hourly rate for all non-overtime hours worked in a workweek;

f. whether Defendant is liable for all damages under the NCWHA, including but not limited to compensatory and statutory damages, interest, liquidated damages, costs, and attorneys' fees.

22. Plaintiff's claims under North Carolina state law are typical of those of the NCWHA Class Members' in that class members have been employed in the same or similar positions as Plaintiff and were subject to Defendant's same or similar unlawful payroll and time reporting practices as Plaintiff.

23. The common questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

24. A class action is appropriate for the fair and efficient adjudication of this controversy. Defendant acted or refused to act on grounds generally applicable to the entire class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of the class members to protect their interests. The damages suffered by individual class members may be relatively small, and the expense and burden of individual litigation make it virtually impossible for the members of the class action to individually seek redress for the wrongs done to them.

25. Plaintiff will fairly and adequately represent the interests of the NCWHA Class Members, and has retained counsel that is experienced and competent in the fields of wage and hour law and class action litigation. Plaintiff has no interest that is contrary to or in conflict with those members of this class and collective action.

26. Plaintiff anticipates amending this Complaint to include and assert Rule 23 claims on behalf of current and former employees of Defendant in other locations and in states besides North Carolina who opt into this case following Conditional Collective Action certification and notice.

27. Plaintiff brings Count III, her FLSA retaliation claim, as an individual action on behalf of herself.

**STATEMENT OF FACTS**

28. Defendant G4S is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d) and the North Carolina Wage and Hour Act.

29. Plaintiff Williams was hired by G4S, as a Security Officer, beginning in approximately September 2014. She worked for Defendant at its clients: 1) Whiting Turner's construction site in Lenoir, North Carolina, 2) J.E. Dunn's construction site in Lenoir, North Carolina, and 3) Google's Data Center in Lenoir, North Carolina and continued to work for G4S until Defendant terminated her assignment at Google in approximately November 2016 and failed and/or refused to facilitate her placement at another work location until she was placed at a work location in Charlotte, North Carolina on January 5, 2017.

30. Plaintiff Williams was employed as a non-exempt, hourly Security Officer at a rate of approximately $13.00 per hour.

31. While Plaintiff's job duties required her to arrive early at a central location, prior to her shift, to pick up equipment and clock in on Defendant's company-wide timekeeping system before traveling to her assigned post at the start of her shift, she was only paid for her scheduled shift hours and received no compensation for her pre-shift work.

32. While Plaintiff's job duties required her to remain at her post until the end of her shift—or sometimes longer—until she was either relieved by the Security Officer scheduled to work the following shift or lock-out procedures were completed at the shift end time, and then required her to travel back to a central location to return her equipment and clock out of Defendant's company-wide timekeeping system, she was only paid for her scheduled shift and received no compensation for her post-shift work.

33. Defendant required Plaintiff and other similarly situated Security Officers to perform certain pre-shift and/or post-shift duties such as (i) picking up equipment and clocking in at a central location (pre-shift), (ii) traveling from the central location to the assigned post (pre-shift), (iii) traveling from the assigned post back to the central location (post-shift), and (iv) returning equipment and clocking out (post-shift), all without compensation.

34. For Plaintiff and other similarly situated Security Officers, these pre-shift and/or post-shift job duties were integral and indispensable to their job as Security Officer and required by Defendant.

35. While Plaintiff's job duties, including her pre-shift and post-shift duties, sometimes required her to work in excess of forty (40) hours per workweek, she was often denied overtime premiums and/or not paid for the entirety of the overtime hours she worked per week.

36. As hourly, non-exempt employees, Plaintiff and the other similarly situated Security Officers are or were entitled to overtime premiums for hours worked in excess of forty (40) each workweek. *See* 29 U.S.C. § 213.

37. As hourly, non-exempt employees, Plaintiff and other similarly situated Security Officers were promised an hourly rate by Defendant for all hours worked in each workweek, and

9

those wages were owed to Plaintiff and other similarly situated Security Officer at the next regularly scheduled pay day. *See* N.C.G.S. § 95-25.6.

38. Plaintiff and all similarly situated hourly, non-exempt Security Officers were required to clock in and out using Defendant's company-wide timekeeping system, either by telephone or on a computer, before and after the end of their shifts.

39. Despite clocking in and out using Defendant's timekeeping system, and thereby reporting pre-shift and/or post-shift work, Plaintiff and all similarly situated Security Officers were required to submit written timesheets reflecting only their scheduled shift hours, which excluded their pre-shift and post-shift work time.

40. Defendant processed payroll for Plaintiff and its other similarly situated Security Officers based only upon the hours reflected on the written timesheets and, therefore, did not pay Plaintiff and its other similarly situated Security Officers for their pre-shift and post-shift duties.

41. Plaintiff and other similarly situated Security Officers were required to work off the clock. This work occurred before the beginning of their shifts and following the end of their shifts.

42. The unpaid work time that Defendant required Plaintiff and other similarly situated Security Officers to work off the clock, at times, caused Plaintiff and other similarly situated employees to work in excess of forty (40) hours in a workweek without overtime pay.

43. Defendant's policy and practice requiring Plaintiff and other similarly situated Security Officers to work off the clock, including pre- and post-shift, denied them both straight time and overtime pay.

44. A significant part, if not all, of this unpaid straight time and overtime work is evidenced in Defendant's own payroll, time-recording, and attendance records, most of which are exclusively in Defendant's own possession.

45. Defendant's policy and practice is to willfully deny its hourly, non-exempt employees pay for all hours worked, including regular hours and hours worked beyond forty (40) in a workweek.

46. Even though Defendant had a computerized timekeeping system in place capable of recording Plaintiff's and other similarly situated Security Officers' actual hours worked, Defendant did not allow Plaintiff and other similarly situated Security Officers to record all work time on their written timesheets submitted for payroll. And, even when pre- and post-shift work was performed and reported, those hours were not reflected on employees' paystubs and were unpaid.

47. On information and belief, Defendant applied and instituted the above-described willful and illegal policies and practices regarding not paying for all hours worked, including pre-shift and post-shift, at all of Defendant's client facilities listed in the class and collective action definitions.

48. Other similarly situated Security Officers who worked for Defendant during the relevant time period also pursue unpaid overtime claims and have opted into this case by submitting their written consents to join, attached as **Exhibit 2** to this Complaint. These Security Officers worked at one or more of the following client sites: Google Data Center (Lenoir, NC); Whiting Turner (Lenoir, NC); J.E. Dunn (Lenoir, NC); Frye Hospital (Hickory, NC); Fiserv (Hickory, NC); and Mission Hospital (Asheville, NC).

49. The net effect of Defendant's policies and practices is that Defendant fails to pay both straight time wages and overtime premiums in order to save payroll costs and taxes. Defendant enjoys ill-gained profits at the expense of Plaintiff and other similarly situated Security Officers.

50. Plaintiff Williams began investigating and complaining about Defendant's unlawful failure to pay for all hours worked, including overtime, in the fall of 2016. She spoke with other Security Officers from other locations, including but not limited to the opt-in plaintiffs whose consents are submitted with this Complaint, to determine that Defendant's unlawful pay policies extend to its other facilities across the country, and not just to the Whiting Turner and J.E. Dunn construction sites and the Google Data Center.

51. At some point in time after September 21, 2016, Plaintiff Williams was called to the Security Office by Shift Supervisor Harry Clark. In addition to Mr. Clark, Shift Supervisor, Chad Powell, was present in the Security Office when Plaintiff Williams arrived. During the meeting with Mr. Clark and Mr. Powell, Plaintiff Williams mentioned that she did not think it made sense that the Security Officers were not paid for the pre- and post-shift time. Mr. Clark responded by saying that when he first started, the Security Officers had fifteen (15) to thirty (30) minutes post shift that was not paid, to which Mr. Powell nodded in agreement.

52. On or about November 2, 2016, Defendant, through its manager Tom Lemier, confronted Plaintiff Williams and threatened her by saying she was "barking up the wrong tree" in investigating Defendant's unlawful pay practices. Plaintiff Williams was uncomfortable and fearful for her job.

53. Thereafter, on or about November 17, 2016, Defendant removed Plaintiff Williams from the work schedule and precluded her from returning to the Google Data Center.

54. Plaintiff Williams, through her undersigned counsel, notified Defendant in writing, on or about November 18, 2016, of Plaintiff William's intention to pursue legal action to recover unpaid wages and damages flowing from Defendant's unlawful pay practices and advised Defendant that it is unlawful to retaliate against Plaintiff Williams for her protected complaints and intention to file a lawsuit.

55. On or about November 20, 2016, Plaintiff Williams sent an email to Defendant's management objecting to her removal from the Google Data Center schedule and asserting that her removal from the Google Data Center schedule was in retaliation for investigating and pursuing legal action regarding Defendant's failure to compensate employees for their work time, including failing to pay for pre- and post-shift off-the-clock time.

56. On or about November 21, 2016, Dallas Clark, Defendant's Director of the Mid-Atlantic Region located in Greensboro, North Carolina, responded to Plaintiff William's November 20, 2016 email, stating that Plaintiff Williams's removal was due to her "refusal/inability to focus on [her]… job duties." Mr. Clark stated that "[n]umerous concerns were raised about [Plaintiff Williams]… doing things other than [her] job while on duty…." Despite Plaintiff Williams "unacceptable" behavior, Mr. Clark informed Plaintiff Williams that G4S was giving her "another chance at another client site" and instructing her to notify Troy Dukes, Operations Manager, of her preference by 3:00 p.m. the following day.

57. Plaintiff Williams responded to Mr. Clark on or about November 22, 2016 stating that she "was not aware that there were any issues with [her]… performance and nobody had ever raised any issues with respect to [her]… performance prior to [her]… complaints about pay." Plaintiff Williams additionally asked for details about her "'refusal/inability to focus on

job duties'" and doing things "'other than [her]… job' that caused disruption and distraction." Plaintiff Williams never received a response to her November 22, 2016 email.

58. The alternative positions offered to Plaintiff Williams were at client sites in Morganton, Hickory, and Statesville, North Carolina, with the closest location being in excess of thirty (30) miles round trip.

59. Plaintiff Williams timely notified Mr. Dukes that she would accept the position in Hickory, North Carolina. Despite her timely election of the Hickory, North Carolina assignment and her repeated follow-up inquiries, Defendant failed to place Plaintiff Williams on the schedule for the Hickory, North Carolina client site.

60. Defendant failed to place Plaintiff Williams in a comparable position with comparable pay and within a reasonable driving distance, leaving her without work and without pay.

61. On or about January 4, 2017, Plaintiff Williams was offered a non-comparable position in Charlotte, North Carolina, which she accepted and started the following day. The Charlotte, North Carolina position is one hundred and twenty (120) miles from her home in Hudson, North Carolina and one hundred and fifty (150) miles round trip from her previous position in Lenoir, North Carolina.

62. Despite Plaintiff Williams's various complaints of Defendant's wage violations, Defendant did nothing to investigate the allegations and did nothing to modify its unlawful pay practice, which Defendant willfully continues today.

63. Defendant's adverse employment action against Plaintiff Williams was unlawful retaliation for complaining about Defendant's unlawful pay practices and her intention to pursue legal action to recover damages under the FLSA and North Carolina Wage and Hour laws.

64. Defendant's adverse employment actions were malicious and punitive in nature and caused Plaintiff Williams both economic and non-economic damages, including lost wages, emotional distress, embarrassment, and other damages.

## COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938
**(Brought Against Defendant by Plaintiff Alexandria Williams Individually and on Behalf of the Off-the-Clock Collective Action Members)**

57. Plaintiff, on behalf of herself individually and all Off-the-Clock Collective Action Members, reasserts the allegations set forth in the above paragraphs.

58. Defendant paid Plaintiff and the Off-the-Clock Collective Action Members on an hourly basis, and they are and were all entitled to the overtime protections of the Fair Labor Standards Act as set forth in 29 U.S.C. §§ 201, *et seq.*

59. At all relevant times, Defendant has been, and continues to be, subject to the minimum wage and overtime provisions of the FLSA because their employees are engaged in commerce and Defendant has annual revenues in excess of $500,000 (five hundred thousand dollars).

60. Plaintiff and other similarly situated Security Officers performed pre-shift and/or post-shift work causing them to work in excess of forty (40) hours in certain workweeks.

61. This work was performed at Defendant's direction and/or with Defendant's knowledge.

62. Defendant willfully violated the FLSA by failing to pay Plaintiff and the other Off-the-Clock Collective Action Members all wages due including overtime premiums for all hours accrued beyond forty (40) in a workweek.

63. Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions complied with the FLSA.

64. As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, Defendant has unlawfully withheld wages from Plaintiff and the Off-the-Clock Collective Action Members. Accordingly, Defendant is liable to Plaintiff and the Off-the-Clock Collective Action Members for unpaid wages including overtime compensation, an additional equal amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendant, and pray this Court:

a. Certify the claim set forth in Count I above as a collective action pursuant to Section 216(b) of the FLSA and issue notice to all similarly-situated hourly, non-exempt Security Officers, regardless of actual title, who worked for Defendant during the last three years at any one or more of the following client sites: Google Data Center (Lenoir, NC); Whiting Turner (Lenoir, NC); J.E. Dunn (Lenoir, NC); Frye Hospital (Hickory, NC); Fiserv (Hickory, NC); Mission Hospital (Asheville, NC); and General Electric (West Jefferson, NC) ("Off-the-Clock Collective Action Members"), informing them of their right to file consents to join the FLSA portion of this action;

b. Designate Plaintiff Alexandria Williams as the Representative Plaintiff of the Off-the-Clock Collective Action and undersigned counsel as the attorneys representing the Off-the-Clock Collective Action Members;

c. Award Plaintiff and all similarly situated employees compensatory and liquidated damages under 29 U.S.C. § 216(b);

d. Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law;

e. Award Plaintiff and all similarly situated employees attorneys' fees and costs as allowed by Section 216(b) of the FLSA, including that Defendant is financially responsible for notifying the Collective Action Members of Defendant's alleged wage and hour violations; and

f. Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable.

## COUNT II
### FED.R.CIV.P. 23 CLASS ACTION FOR VIOLATION OF THE NCWHA
**(Brought Against Defendant by Plaintiff Alexandria Williams Individually and on Behalf of the NCWHA Class Members)**

65. Plaintiff, on behalf of herself and the NCWHA Class Members, reasserts the allegations set forth in the above paragraphs.

66. At all material times hereto, Plaintiff and the NCWHA Class Members were employed by Defendant, who is located within the State of North Carolina, and have been entitled to the rights, protections, and benefits provided under the North Carolina Wage and Hour Act.

67. Pursuant to N.C.G.S. §§ 95-25.1 *et seq.*, Plaintiff brings Count II individually and on behalf of the NCWHA Class Members for Defendant's unlawful withholding of straight time (e.g. non-overtime) wages in violation of the North Carolina Wage and Hour Act, specifically N.C.G.S. § 95-25.6.

68. The state law claim, if certified for class-wide treatment, may be pursued by all similarly situated persons who do not opt out of the Class.

69. Defendant is subject to the pay requirements of N.C.G.S. § 95-25.1 *et seq.*, including § 95-25.6, because Defendant is an employer in the state of North Carolina as defined in N.C.G.S. § 95-25.2(5), and Plaintiff and the NCWHA Class Members are employees as defined in N.C.G.S. § 95-25.2(4).

17

70. Pursuant to N.C.G.S. § 95-25.6, Defendant is required to pay Plaintiff and the NCWHA Class Members all wages accruing to the employee at the next regular payday.

71. By refusing to allow Plaintiff and the NCWHA Class Members to report all hours worked on their payroll timesheets, and thereby refusing to pay for Plaintiff's and NCWHA Class Members' actual hours worked, including pre-shift and post-shift work, Defendant willfully reduced the total number of straight time (e.g. non-overtime) hours on Plaintiff's and NCWHA Class Members' paychecks.

72. These unlawful policies and practices resulted in Defendant's systematic withholding of wages in violation of N.C.G.S. § 95-25.6, entitling Plaintiff and the NCWHA Class Members to all available remedies set forth in N.C.G.S. § 95-25.22.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

a. Certify the state law claim set forth in Count II above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. Designate Plaintiff Alexandria Williams as the Class Representative of the NCWHA Class Members and undersigned counsel as the attorneys representing the NCWHA Class Members;

c. Award Plaintiff and all similarly situated employees compensatory damages and up to an equal amount as liquidated damages, plus costs and attorneys' fees, and all available remedies pursuant to N.C.G.S. § 95-25.22;

d. Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law; and

e. Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable.

## COUNT III
### RETALIATION IN VIOLATION OF 29 U.S.C. § 215(a)(3)
**(Brought Against Defendant by Plaintiff Alexandria Williams Individually)**

73. Plaintiff Alexandria Williams, on behalf of herself, reasserts the allegations set forth in the above paragraphs.

74. The Fair Labor Standards Act prohibits any person from discharging or in any other manner discriminating against any employee who complains of a violation of the act or causes to be instituted any proceeding under or related to the act.

75. Plaintiff engaged in protected activity when she complained to Defendant about its unlawful failure to pay for all hours worked, including overtime owed pursuant to the Fair Labor Standards Act, discussed Defendant's unlawful failure to pay for all hours worked, including overtime owed pursuant to the Fair Labor Standards Act, with her co-workers, and when she notified Defendant of her intention to file a lawsuit to recover damages for its wage violations.

76. Defendant acted in retaliation when it removed Plaintiff from her job assignment at the Google Data Center and also when it failed to provide and place Plaintiff in another, reasonably comparable job assignment.

77. Defendant took these adverse job actions against Plaintiff because of her complaints of Defendant's wage violations.

78. Defendant's actions were punitive, malicious, and in direct retaliation for her complaints of FLSA violations.

79. As a result of Defendant's retaliation, Plaintiff suffered lost wages, emotional distress, embarrassment, and other economic and non-economic losses.

WHEREFORE, Plaintiff demands judgment against Defendant and prays this Court:

a. Order Defendant to reinstate Plaintiff's employment to a reasonably comparable employment position with comparable pay and comparable travel requirements to her assignment at the Google Data Center from which Defendant removed her;

b. Award Plaintiff lost wages and non-economic damages flowing from Defendant's unlawful retaliation, plus an equal amount in liquidated damages;

c. Award Plaintiff prejudgment and post-judgment interest as provided by law; and

d. Award Plaintiff such other relief as this Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a jury trial on all claims with respect to which she may have the right to a jury.

Respectfully submitted, this the 20th day of January, 2017

**STRIANESE, PLLC**

/s/ *Tamara L. Huckert*
Christopher R. Strianese, N.C. Bar No. 46918
Tamara L. Huckert, N.C. Bar No. 35348
401 North Tryon St., 10th Fl.
Charlotte, NC 28202
Tel. 704-998-2577
Fax. 704-998-5301
chris@strilaw.com
tamara@strilaw.com
www.strilaw.com

***ATTORNEYS FOR PLAINTIFF***