**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION**

**ALEXANDRIA WILLIAMS,**

on Behalf of Herself
and All Others Similarly Situated,

            Plaintiff,

 v.

**G4S SECURE SOLUTIONS (USA)
INC.,**

            Defendant.

**CASE NO. 1:17-CV-00051**

---

<u>**PLAINTIFF'S UNOPPOSED MOTION TO APPROVE FLSA SETTLEMENT
AGREEMENT, INCLUDING AWARD OF ATTORNEYS' FEES AND COSTS,
AND INTEGRATED MEMORANDUM IN SUPPORT**</u>

      Plaintiff Alexandria Williams, on behalf of herself and others similarly situated,

with the consent of Defendant G4S Secure Solutions (USA) Inc., moves this Court for an

order approving the parties' FLSA Settlement Agreement (attached as Exhibit 1), and

approving as reasonable the Settlement Agreement's proposed award of attorneys' fees and

costs.   In support of this motion, the parties state as follows:[1]

---

[1] Throughout this Motion, Plaintiff uses initial caps to reference terms defined in the
Settlement Agreement (Ex. 1) and refers the Court to that agreement and its defined terms
for consistency.

1

# I.    <u>CASE BACKGROUND</u>.

Plaintiff filed this federal Fair Labor Standards Act ("FLSA") collective action lawsuit on January 20, 2017, alleging that she and other Security Officers employed by Defendant were unlawfully denied overtime premiums pursuant to Defendant's unlawful failure to pay for all hours worked, including off-the-clock work. (ECF No. 1). Defendant filed its Answer, also asserting several affirmative defenses, on March 7, 2017. (ECF No. 6).

On June 28, 2017, Plaintiff moved for certification of a collective action pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA"). (ECF Nos. 15-16). Defendant filed its Opposition to Collective Action Certification on August 23, 2017. (ECF No. 22). And, on September 13, 2017, Plaintiff filed her Reply in Support of Certification. (ECF No. 26).

On December 5, 2017, with Defendant's consent, Plaintiff filed her Amended Complaint asserting substantially the same claims asserted in her Complaint and also adding a North Carolina Retaliatory Employment Discrimination Act ("REDA") claim. (ECF No. 27). Defendant filed its Answer to Plaintiff's Amended Complaint, again asserting several affirmative defenses, on December 19, 2017. (ECF No. 28).

The Court granted Plaintiff's Collective Action Certification Motion on January 24, 2018. (ECF No. 29). The Parties mutually agreed on the Conditional Certification Notice Form, which was filed along with a Joint Status Report on February 14, 2018. (ECF No. 31). On April 2, 2018, with Defendant's consent, Plaintiff filed a Consent Motion asking

the Court to approve the Parties' agreed FLSA notice. (ECF No. 36). The Court granted

the motion and approved the FLSA notice on April 4, 2018. (ECF No. 37).

Plaintiff utilized a third-party administrator to send notice to the following certified

collective class:

> All hourly, non-exempt Security Officers, regardless of actual title, who worked for G4S during the last three years at any one or more of the following client sites: Google Data Center (Lenoir, NC); Whiting Turner (Lenoir, NC); J.E. Dunn (Lenoir, NC); Frye Hospital (Hickory, NC); Fiserv (Hickory, NC); Mission Hospital (Asheville, NC); and General Electric (West Jefferson, NC) ("Security Officer Collective Class").

(Declaration of Christopher R. Strianese, "Strianese Declaration", attached as Exhibit 2, at

¶ 4; Declaration of Tracey F. George, "George Declaration", attached as Exhibit 3, at ¶ 4).

A total of 62 Security Officers, including Plaintiff Alexandria Williams, consented to join

this litigation. (Strianese Declaration, at ¶ 5; George Declaration, at ¶ 5).

Prior to incurring the cost of conducting full merit-based discovery, the parties

agreed to mediate this case in an attempt to reach a resolution on all claims. (Strianese

Declaration, at ¶ 6; George Declaration, at ¶ 6). In connection with the impending

mediation, Defendant produced certain information regarding the Opt-in Plaintiff's hourly

rates and dates of employment. (Strianese Declaration, at ¶ 7; George Declaration, at ¶ 7).

Defendant also provided certain electronic time records for Opt-in Plaintiffs working at

various client sites, sufficient to enable Plaintiff and her counsel to value Plaintiff's and

the Opt-in Plaintiffs' claims. (Strianese Declaration, at ¶ 7; George Declaration, at ¶ 7).

Plaintiff and her counsel also conducted a comprehensive investigation and evaluation of

the facts and law relating to the claims asserted in the Lawsuit, including interviewing Opt-

in Plaintiffs regarding their work hours, clock-in and clock-out procedures, and work performed before and after clocking in and out each shift. (Strianese Declaration, at ¶ 8; George Declaration, at ¶ 8).

On November 9, 2018, the parties participated in a full-day mediation with Kenneth P. Carlson, Jr., in Charlotte, North Carolina, which resulted in this Settlement Agreement. (Strianese Declaration, at ¶ 9; George Declaration, at ¶ 9). In light of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, Plaintiff and her counsel believe that this Settlement Agreement is in the best interests of Plaintiff and each of the Opt-in Plaintiffs and represents a fair, reasonable, and adequate resolution of the FLSA collective claims asserted in the Lawsuit. (Strianese Declaration, at ¶ 10;   George Declaration, at ¶ 10).

Defendant denies and continues to deny all of Plaintiff's allegations in the Lawsuit. Nonetheless, without admitting or conceding any liability or responsibility for damages, Defendant has agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing litigation.

## II.    **SETTLEMENT AGREEMENT TERMS.**

The Settlement Agreement is attached as Exhibit 1, and the Court is respectfully referred to the Settlement Agreement for the complete terms and conditions of the settlement. However, by way of summary, the key settlement terms include:

- Defendant shall remit a Gross Settlement Fund amount equal to $97,000.00;

- the attorneys' fees, expenses, notice administration costs, and settlement administration costs deducted from the Gross Settlement Fund amount will be equal to the sum of $35,000;

- the FLSA Collective Members will release their federal, state, and local wage claims though the Effective Date, subject to Court approval;

- the Net Settlement Fund (Gross Settlement Fund, minus Attorneys' Fees and Costs and Administrative Costs) will be divided pro rata amongst the FLSA Collective Members based upon an equitable points system, accounting for each Member's average hourly rate and number of FLSA Workweeks;

- lead Plaintiff Alexandria Williams is not asking for a Service Payment for the work she performed litigating this case on behalf of the collective;

- Defendant shall pay the mediator's fee for the services provided by the mediator;

- this action shall be dismissed, with prejudice.

## III. ARGUMENT.

### A. <u>This Court Should Approve The Parties' Settlement</u>.

An FLSA collective action is not a class action – individuals participating affirmatively choose to be bound and represented by counsel, and there are no absent class members whose claims are being settled. *See Digidio v. Crazy Horse Saloon and Restaurant*, 880 F.3d 135 (4th Cir. 2018). Thus, the reasons for judicial scrutiny of class

action settlements are not present in FLSA opt in settlements, because absent class members are not bound by the case's outcome. *Wagner v. Loew's Theatres, Inc.*, 76 F.R.D. 23 (M.D.N.C. 1977); *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48 (S.D.N.Y. 1972). Unlike settlements under Rule 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986).

Nonetheless, courts have held that settlement of FLSA claims, in order to effectuate a release, must be presented to the district court for review and determination whether the settlement is fair and reasonable. *In re: Dollar General Stores FLSA Litigation*, 5:09-MD-1500, 2011 WL 3904609 *2 (E.D.N.C. Aug. 22, 2011); *Wagner*, 76 F.R.D. at 23. For the Court to approve a FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties. The Court may enter a stipulated judgment only after scrutinizing the settlement for fairness. And the settlement agreement must contain an award of reasonable attorneys' fees. *Id*.; *see also*; *Porter v. W. Side Rest., LLC*, No. 13-1112-JAR-KGG, 2015 WL 685855, at *1 (D. Kan. Feb. 18, 2015) (citing *Peterson v. Mortgage Sources, Corp*., No. 08-2660-KHV, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

The standard for court approval is straightforward: a district court should approve a fair and reasonable settlement if it was reached as an arm's length resolution of contested litigation to resolve a bona fide dispute under the FLSA. *Lynn's Food Stores,* 679 F.2d at

1352-54.  First, the court must be satisfied that the settlement was the product of "contested litigation."  *Id.* at 1353.  Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the parties under the FLSA.  *Id.*  Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arms'-length settlement as *indicia* of fairness.  *Id.*  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* Based upon the contested nature of this case and the quality of the settlement, Plaintiff respectfully submits that this Court should conclude that the parties' settlement is a reasonable arms-length resolution of a *bona fide* dispute in contested litigation, and thus approve the settlement.

### 1.    The Proposed Settlement Is The Product Of Contested Litigation.

Unquestionably, the proposed settlement is the product of contested litigation.  *See* Docket Sheet.  In her Complaint, Plaintiff made detailed, factual allegations describing Defendant's allegedly unlawful compensation practices. Defendant filed its Answer denying all of Plaintiff's material factual allegations and asserting an array of affirmative defenses that it argued would bar Plaintiff's claims in whole or in part.

The parties conducted extensive factual investigations regarding the issues raised in Plaintiff's Complaint and Defendant's Answer, as amended. Plaintiff's counsel interviewed dozens of Defendant's current and former employees, compared their findings, reviewed voluminous documents, and analyzed their pay and time records.  (Strianese

Decl., ¶ 11; George Decl., ¶ 11). Similarly, Defendant analyzed its records and interviewed its own witnesses to evaluate the veracity of Plaintiff's allegations and presented its own competing calculations at mediation to negate Plaintiff's claims. (Strianese Decl., ¶ 12; George Decl., ¶ 12). The parties also undertook considerable legal analysis of the various issues implicated in this case, including fully analyzing the issues pertaining to FLSA conditional certification. (Strianese Decl., ¶ 13; George Decl., ¶ 13). Indeed, prior to settling and throughout mediation, the parties exchanged and discussed the caselaw that each party felt was relevant to this matter. (Strianese Decl., ¶ 13; George Decl., ¶ 13).

The settlement of this lawsuit occurred during a hard-fought, full-day mediation. (Strianese Decl., ¶ 14; George Decl., ¶ 14). Before the settlement, the parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue. (Strianese Decl., ¶ 15; George Decl., ¶ 15). Accordingly, this Court should readily conclude that the proposed settlement was the product of contested litigation.

> ## 2. The Settlement Fairly and Reasonably Resolves A Bona Fide Dispute.

"There is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 503 (M.D.N.C. 2018) (internal quotations omitted) (approving FLSA settlement based upon determination that the "proposed settlement appears to be the product of arms-length bargaining between

experienced collective counsel and experienced defense counsel, who have independently evaluated the likelihood of prevailing on their claims and defenses"); *Little Rock School District v. Pulaski Cnty. Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

Here, as in *Kirkpatrick*, this settlement is the product of arm's-length negotiations by experienced counsel and provides significant monetary relief to Plaintiff and all Class Members who choose to participate by cashing their settlement checks. It also eliminates the real, inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness attaches to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

The litigation was hard fought and settled only after nearly two years of litigation, including a contested conditional collective action certification motion. (Strianese Decl., ¶ 16; George Decl., ¶ 16). Plaintiff achieved conditional certification and administered

notice; scrutinized thousands of electronic pay and time records, and many more pages of hand-written time sheets and electronic time punch entries all in order to determine the amount of unpaid wages allegedly owed to each Opt-in Plaintiff who consented to join this case. (Strianese Decl., ¶ 17; George Decl., ¶ 17). In addition to document production and review, Plaintiff's counsel interviewed dozens of Opt-in Plaintiffs regarding their work experiences and unpaid overtime claims. (Strianese Decl., ¶ 18; George Decl., ¶ 18).

Serious questions of fact and law placed the ultimate outcome of the litigation in doubt. (Strianese Decl., ¶ 19; George Decl., ¶ 19). Plaintiffs claimed, among other things, that they were required to perform work prior to the start of their scheduled shift and after the end of their scheduled shift, but they were only paid for their scheduled shift time. (Strianese Decl., ¶ 20; George Decl., ¶ 20). Defendant vehemently denied this allegation and claimed that any unpaid time was *de minimus* or the result of a bona fide rounding policy. (Strianese Decl., ¶ 21; George Decl., ¶ 21). Both sides ran the risk that summary judgment motions would be denied and that each side would have to persuade a jury that voluminous and potentially conflicting documents concerning the Plaintiff's multiple and varying client sites, security posts, and timeclock locations supported their allegations that pre- and post-shift work was suffered and permitted. (Strianese Decl., ¶ 22; George Decl., ¶ 22). In addition, Plaintiffs allege that their pre- and post-shift work is not fully captured with Defendant's time-keeping system, nor did Plaintiffs write down this time on their manual time sheets—though the parties dispute whether reporting that pre- and post-shift work was even allowed. (Strianese Decl., ¶ 23; George Decl., ¶ 23). As a result, damages

would have been subject to attempted re-creations of 62 Plaintiffs' clock in/out procedures at various posts and jobs sites and competing expert modeling and reports. (Strianese Decl., ¶ 23; George Decl., ¶ 23). Moreover, some of Plaintiffs' unpaid pre- and post-shift work was straight-time hours (e.g. work not in excess of 40 hours in a workweek), which is not recoverable overtime under the FLSA. (Strianese Decl., ¶ 24; George Decl., ¶ 24). Therefore, both substantive and procedural issues created obstacles in the litigation.

The settlement offers significant payments to Plaintiff and the FLSA Collective Members now. (Strianese Decl., ¶ 25; George Decl., ¶ 25). Under the settlement formula, the FLSA Collective Members will each receive payment for an average of 1 hour per week based on an equitable formula that takes into account each Collective Member's number of weeks worked and average hourly rate. *Id.* The equitable formula provides an average payment per Collective Member of $1,000, which represents an average of over 52 hours of overtime per Collective Member at the Collective Member's approximate overtime rate of $19.00. (Strianese Decl., ¶ 26; George Decl., ¶ 26).[2]

This is significant and meaningful relief warranting settlement approval. (Strianese Decl., ¶ 27; George Decl., ¶ 27). Further, if the settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals. Or, such recovery may not occur at all after trial and appeal. For these reasons, settlement approval now should be highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("As courts

---

[2] The settlement payments to Collective Members reflects a compromise: it is not an admission by Plaintiffs that this is all the wages they are owed, and it is not an admission by Defendant that it owes any back wages at all.

have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *see also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation).

Accordingly, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute over FLSA coverage and approve the settlement.

## B. <u>Plaintiff Does Not Request A Service Award</u>.

Although Plaintiff Alexandria Williams initiated this litigation to help other Security Officers recover allegedly unpaid overtime wages, and provided invaluable service to Class Counsel over the course of nearly two years of litigation resulting in this favorable settlement for the FLSA Collective Members, she does not seek a service award with this Settlement. (Strianese Decl., ¶ 28; George Decl., ¶ 28).

## C. <u>The Attorneys' Fees and Expenses Requested Are Reasonable And Warrant This Court's Approval</u>.

Plaintiff seeks an award of 23.9% of the Gross Settlement Fund ($23,145.00) as attorneys' fees, plus their costs and expenses of $11,855, which includes the out-of-pocket costs to administer conditional certification notice to the putative opt-in plaintiffs in this case, as well as the costs to administer this settlement. Though an award of attorneys' fees

in an FLSA settlement is mandatory, the Court has discretion to determine the reasonableness of the fee amount. *See Lynn Food Stores,* 679 F.2d at 1354.

Considering percentage fees awarded in other common fund cases, and also applying the *Johnson v. Georgia Highway Express, Inc.* factors explained below, the fee Plaintiff seeks in this case is abundantly reasonable and warrants this Court's approval.

### 1. Customarily, One-Third Of The Common Fund Is A Reasonable Fee.

The preferred method for awarding attorneys' fees to a prevailing plaintiff is to award a percentage of the common fund created by the litigation. *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Hall v. Higher One Machines, Inc.*, 2016 WL 5416582 *7 (E.D.N.C. September 26, 2016) (courts prefer percentage of the fund method cross-checked by lodestar calculation). Under the FLSA, prevailing plaintiffs are entitled to recover their reasonable attorneys' fees. *See* 29 U.S.C. § 216(b). In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Following this guidance, the parties agreed that Plaintiff's Counsel would receive $35,000.00 of the Settlement Fund as attorneys' fees, inclusive of all costs and expenses. This amounts to $23,145 in attorneys' fees (e.g. 23.9% of the common fund), plus reimbursement of $11,855 in out-of-pocket costs and expenses. These out-of-pocket expenses include the costs to administer notice of the collective certification as well as costs to administer settlement payments to Plaintiff and the Opt-in Plaintiffs.

Courts have generally expressed "a preference for the percentage of the fund method." *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994).; *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993) ("a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases"); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("we believe that the percentage of the fund approach is the better reasoned in a common fund case").

The percentage of the fund approach aids litigants and the courts because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the *efficient prosecution and early resolution* of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 120 (2d. Cir. 2005) (emphasis added) (quoting *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, *25 (S.D.N.Y Nov. 26)). Thus, a fee award based on a percentage of the fund "incentivizes lawyers to maximize the Class recovery." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006); *see also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome"); Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 534 (Summer 1998) ("Hence, under the percentage approach, the class members and the class counsel have the same interest – maximizing the recovery of the class.").

The percentage of the fund that counsel seeks here falls squarely within the range this District and others have approved in other FLSA cases. *See*, *e.g.*, *id.* (concluding that a fee request that was 33% of the total settlement amount came within the range approved by this District and charged by counsel in other matters); *see also Bruner*, 2009 WL 2058762, at *8 (noting the same about the requested fee award, which was 33% of the common fund); *Koehler v. Freightquote.com, Inc.*, No. 12-2505-DDC-GLR, 2016 WL 3743098, at *8 (D. Kan. July 13, 2016) (also approving fee award equal to 33% of the common fund).

Accordingly, an award of 23.9% of the common fund or $23,145 in attorneys' fees, plus $11,855 for out-of-pocket costs and expenses is abundantly reasonable in this case.

### 2. The Requested Fee Is Also Reasonable Under *Johnson*.

Other factors that Courts consider in determining the reasonableness of an attorneys' fee award include the following twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974): (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and the results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. Applying these factors here confirms the reasonableness of the requested fee.

- *Johnson* Factor 1: Time and Labor Involved

This case required Class Counsel to expend significant time and labor in pursuing these claims and the amount of fees sought is far less than Class Counsel's lodestar fee. Specifically, Class Counsel have litigated the claims in this case for more than two years and invested over 250 hours working on this case with no assurance of any recovery at all. (Strianese Decl., ¶ 29; George Decl., ¶ 29; Billing Summary, attached as Exhibit 4). These hours include time spent investigating the facts of this case; interviewing opt-in plaintiffs regarding their work experiences; gathering declarations in support of conditional certification; briefing the conditional certification motion; administering notice to putative opt-in plaintiffs; conducting discovery of and analyzing complete pay and time records for all opt-in plaintiffs; creating a damages model and performing damages calculations for all opt-in plaintiffs in preparation for mediation; participating in mediation; negotiating a settlement favorable to all Class Members; devising a settlement allocation formula to ensure an equitable distribution of funds; and drafting the Settlement Agreement and approval papers. (Strianese Decl., ¶ 30; George Decl., ¶ 30).

And, while this District and other courts within this Circuit have applied a "lodestar cross-check" to determine whether fees sought are reasonable, Class Counsel are seeking *substantially less* than their lodestar with this settlement. As of the filing of this application, Class Counsel's lodestar is approximately $128,000 at their standard hourly rates.[3]

---

[3] Tracey George's rate for FLSA class and collective work is $575.00/hr., Christopher Strianese's and Tamara Huckert's rate for class and collective action work is $400.00/hr, and Sarah Wright's rate is $225/hr. (Strianese Decl., ¶ 31; George Decl., ¶ 31). However,

(Strianese Decl., ¶ 31; George Decl., ¶ 31; Billing Summary, Exh. 4). However, with this settlement, Class Counsel only seek to recover $23,145, which equals less than 20% of Class Counsel's lodestar and a blended hourly rate of only $88, which is well below the rates regularly approved in FLSA cases. *See, e.g., Kirkpatrick*, 352 F. Supp. 3d at 507 (approving FLSA settlement and holding that Ms. George's and Mr. Strianese's standard hourly rates of $575 and $400, respectively, "fall within what the court observes to be the prevailing market rates in the relevant community for this type of work."); *Personhuballah v. Alcorn*, 239 F. Supp. 3d 929, 948 (E.D. Va. 2017) (approving rates of $575 for senior partners, $390 to $410 for senior associates, and $310 to $345 for junior associates), *vacated and remanded on other grounds*, *Brat v. Personhuballah*, 883 F.3d 475 (4th Cir. 2018).

The fees sought by Class Counsel are certainly reasonable considering that courts routinely approve multipliers above and beyond the lodestar as reasonable fee awards in class cases. *See*, *e.g.*, *In re Bank of Am. Wage & Hour Emp't Litig.*, 2013 WL 6670602, at *3 (approving a fee award representing a 1.10 multiplier of the lodestar); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (finding that percentage fee award resulting in a lodestar multiplier of 1.18 was "imminently reasonable" based on counsel's risks associated with taking the case); *Koehler*, 2016 WL 3743098, at *6 (approving fee award equivalent to 1.3 times the Court's determined lodestar amount as reasonable).

---

Class Counsel has agreed to seek less than their lodestar fees in order to secure a favorable settlement for Plaintiff and the Collective Members. *Id.*

As such, given that Plaintiff seeks to recover significantly less than Class Counsel's time and labor invested in this case, this factor weighs heavily in favor of approving the fee as reasonable. It is important to remember that this is Class Counsels' only opportunity to be awarded fees for the work on this case. However, their work to administer the settlement will continue after this application without any compensation. (Strianese Decl., ¶ 32; George Decl., ¶ 32). As an example, there will be inquiries from the Collective Members regarding the terms and consequences of the settlement and the computation and payout of the settlement. Counsel will perform this work without any additional compensation. *Id.*

- *Johnson* Factor 2: Novelty and Difficulty of Question Presented

FLSA collective actions are both procedurally and substantively complex. By definition, off-the-clock work is not recorded. This presents unique evidentiary hurdles to establishing both liability and damages in a case such as this. In seeking to determine the proper amount of unpaid overtime, Class Counsel interviewed dozens of Opt-in Plaintiffs and reviewed thousands of time clock records and hand-written time sheets. While this is not particularly novel in the context of FLSA off-the-clock litigation, it is time consuming and required a significant time investment. Moreover, Defendant strenuously opposed collective action certification, claiming dissimilarities among its various client sites rendered the Opt-in Plaintiffs too dissimilar to proceed collectively and argued a *de minimus* defense precluded recovery altogether. Class Counsel tackled these issues to achieve collective certification and a favorable recovery for the Opt-in Plaintiffs.

- *Johnson* Factor 3: Skill Requisite to Perform Legal Service Properly

Out-of-state Class Counsel focuses her practice in plaintiff-side class actions, including primarily FLSA collective actions, which also make up a significant portion of local counsel's work.  (Strianese Decl., ¶ 33; George Decl., ¶ 33).  Class Counsel stay abreast of the changing law to ensure they maximize their clients' recovery in cases pending all across the United States.  (Strianese Decl., ¶ 34; George Decl., ¶ 34). This is because it is a unique niche area of law, the landscape of which changes regularly as a result of growing jurisprudence spanning the entire country.  *Id.*  Very few firms in the Charlotte area litigate FLSA collective action cases on behalf of employees due to their investment of time, energy, and financial resources required to appropriately pursue them. (Strianese Decl., ¶ 35). Due to the nature of FLSA litigation, attorneys handling these cases must also be prepared to make these investments with the very real possibility of ultimately obtaining no attorney fees or recovery of costs expended. This type of risk is outside the scope of risk that most attorneys and firms can and are willing to handle.  (Strianese Decl., ¶ 35; George Decl., ¶ 35).

- *Johnson* Factor 4:  Preclusion of Other Employment

Class Counsel litigated this case for more than two years.  During that time, the work performed by Class Counsel placed some demands on Class Counsel's time and resources.  (Strianese Decl., ¶ 36; George Decl., ¶ 36). Certainly, work on this case took resources and time that Class Counsel could have devoted to one or more other cases, and this factor weighs in favor of approval.

- *Johnson* Factor 5: Customary Fee

Class Counsel customarily charges a 40% contingency fee plus expenses, and that is the fee for which Plaintiff Alexandria Williams contracted in this case. However, Class Counsel has agreed to only seek a 23.9% contingency fee with this Settlement Agreement, and this factor weighs in favor of approval. (Strianese Decl., ¶ 37; George Decl., ¶ 37).

- *Johnson* Factor 6: Whether Fee is Fixed or Contingent

As explained for Factor 5, Class Counsel took this case on a 40% contingency contract. Accordingly, Class Counsel undertook this litigation with the risk of obtaining nothing if no recovery was obtained for Plaintiff or the Class. Moreover, Class Counsel's contingency arrangement required them to invest both time and expenses with no guaranty of recoupment. This factor favors fee approval.

- *Johnson* Factor 7: Time Limitations Imposed

While there were no unusual time limitations imposed by this case, the nature of this complex litigation did pose a time commitment, as discussed in more detail for Factors 1 and 4 above.

- *Johnson* Factor 8: Amount Involved and Results Obtained

Class Counsel obtained a favorable result for all Class Members, as described in detail above and in the accompanying settlement agreement.

- *Johnson* Factor 9: Experience, Reputation and Ability of Attorneys

Class Counsel have significant experience in litigating FLSA wage and hour cases across the country and enjoy impeccable reputations for success in this area of law.

Attorney Tracey George has more than 18 years of legal experience and has served as class counsel in dozens of FLSA collective action. (George Decl., ¶ 38). Similarly, attorneys Christopher Strianese and Tamara Huckert each have more than 13 years of legal experience, and attorney Sarah Wright has more than 5 years of legal experience, and Strianese Huckert LLP has served as class counsel in numerous FLSA collective action cases in this District. (Strianese Decl., ¶ 38). Together, Class Counsel have recovered many millions of dollars on behalf of FLSA opt-in plaintiffs. (Strianese Decl., ¶ 39; George Decl., ¶ 39). This factor weighs in favor of fee approval.

- *Johnson* Factor 10: Undesirability of the Case

Class Counsel did not find this case undesirable to prosecute. However, many attorneys are reluctant to take on cases such as this where there is a very real risk of no recovery and the time commitment is significant.

- *Johnson* Factor 11: Nature and Length of the Professional Relationship

As stated above, Plaintiff Alexandria Williams engaged Class Counsel's services over two-and-one-half years ago.

- *Johnson* Factor 12: Awards in Similar Cases

Fee awards of one-third of the common fund (significantly more than the 23.9% sought with this settlement) are common in FLSA cases, including in misclassification claims. *See, e.g., Barbosa*, 2015 WL 4920292, at *11; *Bruner,* 2009 WL 2058762, at *7; *Koehler*, 2016 WL 3743098, at *8; *Payson v. Capital One Home Loans, LLC*, 2009 U.S. Dist. Lexis 88468, *6-8 (D. Kan. Sept. 24, 2009); *Barnwell v. Corrections Corp. of Am.*,

Order Approving Settlement Agreement, Case No. 2:08-CV-02151-JWL-DJW (D. Kan. Feb. 12, 2009); *Perry v. Nat'l City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008); *Burks v. Bi-State Redevelopment*, Case No. 4:09CV1302 (MLM) (E.D. Mo. Jan. 31, 2011) (Doc. 91 at 3, ¶8 & Doc. 102, p. 4, ¶9); *DeMunecas v. Bold Food, LLC*, 2010 U.S. Dist. Lexis 87644, *22-24 (S.D.N.Y. Aug. 23, 2010); *Dillworth v. Case Farms Processing, Inc.*, 2010 U.S. Dist. Lexis 20446, * 20-21 (N.D. Ohio Mar. 8, 2010); *Wolfert v. United HealthGroup, et al.*, Case No. 4:08CV01643-TIA (E.D. Mo. May 5, 2009).  Given the prevalence of fee awards of one-third of the common fund in FLSA cases, Class Counsel's request for attorneys' fees equal to only 23.9% of the common fund here is abundantly reasonable.

Applying the *Johnson* factors, Class Counsels' fee request is reasonable and warrants approval.

### 3. Plaintiff's Request For Costs And Expenses Is Also Reasonable.

An award of reasonable attorneys' costs and expenses is also mandatory under the FLSA.  *See* 29 U.S.C. 216. Under the FLSA, this may include "reasonable out of pocket expenses" that go "beyond those normally allowed under Fed. R. Civ. P 54(d) and 28 U.S.C. § 1920." *Smith v. Diffee Ford Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002); *Lamon v. City of Shawnee, Kan.*, 754 F. Supp. 1518, 1524 (D. Kan. 1991) (noting expenses under the FLSA generally include "all reasonable out-of-pocket expenditures" that are not "normally absorbed as part of law firm overhead"), *rev'd* in part on other grounds by 972 F.2d 1145; *Calderon v. Witvoet,* 112 F.3d 275, 276 (7th Cir. 1997)

(observing that expenses such as travel are not "costs" under 29 U.S.C. § 1920, but "are nonetheless reimbursable-but as part of the award for attorneys' fees, because travel and meal expenses are the sort of things that a lawyer includes with a bill for professional services.").

Class Counsel request reimbursement for $11,855 in expenses. (Strianese Decl., ¶¶ 40-41; George Decl., ¶¶ 40-41). These expenses were reasonably and necessarily incurred in the prosecution of the case. *Id.* In fact, of these expenses, $6,501 was incurred to administer the process of sending notice and opt-in consents to putative plaintiffs to notify them of their opportunity to join this case, and $2,724 will reimburse Class Counsel for the costs of a third-party settlement administrator. Accordingly, Plaintiff requests this Court approve Class Counsels' award of costs and expenses in the amount of $11,855.

WHEREFORE, for these reasons, Plaintiff requests this Court's Order approving the parties' Settlement Agreement as fair and reasonable (Ex. 1) and approving an award of attorneys' fees equal to $23,145 (e.g. 23.9% of the Gross Settlement Fund) plus $11,855 in costs and expenses.

Date: May 16, 2019.

Respectfully submitted,

**STRIANESE HUCKERT, PLLC**

By: */s/ Christopher R. Strianese*
    Christopher R. Strianese
    NC Bar No. 46918
    *E-Mail: chris@strilaw.com*

Tamara L. Huckert
NC Bar No. 35348
*E-Mail: tamara@strilaw.com*
3501 Monroe Road
Charlotte, NC 28205
(704) 996-2101

**DAVIS GEORGE MOOK LLC**

By: */s/ Tracey F. George*
Tracey F. George
MO Bar No. 52361
1600 Genessee Street, Suite 328
Kansas City, MO 64102
Tel: (816) 569-2629
Fax: (816) 447-3939
*tracey@dgmlawyers.com*

*Attorneys for Plaintiffs*

## **Certificate of Word Count**

Pursuant to LR 7.3(d)(1), I certify that this brief was prepared on a computer, and the body of the brief contains 5,721 words, exclusive of caption, signature lines, and certificates of service and word count. Counsel relies on the word count feature of word processing software in making this certification.

This 16th day of May, 2019.

*s/ Tracey F. George*
Tracey F. George
Davis George Mook LLC
1600 Genessee St., Suite 328
Kansas City, MO 64102
Tracey@dgmlawyers.com

## Certificate of Service

I certify that on the date set forth below, I electronically filed the foregoing PLAINTIFF'S UNOPPOSED MOTION TO APPROVE FLSA SETTLEMENT AGREEMENT with the Clerk of Court using the CM/ECF system which will send notification of the filing to the following:

Kelly Eisenlohr-Moul, Esq. (NC 50523)
DINSMORE & SHOHL LLP
1100 Peachtree Street, Suite 950
Atlanta, Georgia 30309
Kelly.Eisenlohr-Moul@dinsmore.com
Telephone: 470-300-5337

Charles M. Roesch, Esq.
Michael B. Mattingly, Esq.
DINSMORE & SHOHL LLP
255 E. Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: 513-977-8397
Fax: 513-977-8141
Email: chuck.roesch@dinsmore.com
michael.mattingly@dinsmore.com

*Attorneys for Defendant*

This 16th day of May, 2019.

*s/ Tracey F. George*
Tracey F. George
Davis George Mook LLC
1600 Genessee St., Suite 328
Kansas City, MO 64102
Tracey@dgmlawyers.com