THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

ALEXANDRIA WILLIAMS,

on Behalf of Herself
and All Others Similarly Situated,

Plaintiff,

v.

G4S SECURE SOLUTIONS (USA) INC.,

Defendant.

CASE NO. 1:17-CV-00051

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT, along with all exhibits hereto (collectively, the "Agreement" or "Settlement"), resolves the unpaid wage claims asserted in the above-captioned matter ("the Lawsuit") and is entered into between the Named Plaintiff Alexandria Williams ("Plaintiff") and sixty-one (61) individuals who submitted Consent to Join forms in this litigation ("FLSA Opt Ins" or the "Opt-in Plaintiffs"), and G4S Secure Solutions (USA) Inc. ("Defendant" or "G4S").

## FACTUAL BACKGROUND AND RECITALS

1. Plaintiff filed the Lawsuit in the United States District Court, Middle District of North Carolina, on January 20, 2017. (ECF No. 1).

2. Defendant filed its Answer, also asserting several affirmative defenses, on March 7, 2017. (ECF No. 6).

3. On June 28, 2017, Plaintiff moved for certification of a collective action pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA"). (ECF Nos. 15-16). Defendant filed its Opposition to Collective Action Certification on August 23, 2017. (ECF No. 22). And, on September 13, 2017, Plaintiff filed her Reply in Support of Certification. (ECF No. 26).

4. On December 5, 2017, with Defendant's consent, Plaintiff filed her Amended Complaint asserting substantially the same claims asserted in her Complaint and also adding a North Carolina Retaliatory Employment Discrimination Act ("REDA") claim. (ECF No. 27).

5. Defendant filed its Answer to Plaintiff's Amended Complaint, again asserting several affirmative defenses, on December 19, 2017. (ECF No. 28).

6. The Court granted Plaintiff's Collective Action Certification Motion on January 24, 2018. (ECF No. 29).

7. The Parties mutually agreed on the Conditional Certification Notice Form, which was filed along with a Joint Status Report on February 14, 2018. (ECF No. 31).

8. On April 2, 2018, with Defendant's consent, Plaintiff filed a Consent Motion asking the Court to approve the Parties' agreed FLSA notice. (ECF No. 36). The Court granted the motion and approved the FLSA notice on April 4, 2018. (ECF No. 37).

9. Plaintiff utilized a third-party administrator to send notice to the following certified collective class:

2

All hourly, non-exempt Security Officers, regardless of actual title, who worked for G4S during the last three years at any one or more of the following client sites: Google Data Center (Lenoir, NC); Whiting Turner (Lenoir, NC); J.E. Dunn (Lenoir, NC); Frye Hospital (Hickory, NC); Fiserv (Hickory, NC); Mission Hospital (Asheville, NC); and General Electric (West Jefferson, NC) (**"Security Officer Collective Class"**).

10. A total of 62 Security Officers, including Plaintiff Alexandria Williams, consented to join this litigation.

11. Prior to incurring the cost of conducting full merit-based discovery, the parties agreed to mediate this case in an attempt to reach a resolution on all claims. In connection with the impending mediation, Defendant produced certain information regarding the Opt-in Plaintiff's hourly rates and dates of employment. Defendant also provided certain electronic time records for Opt-in Plaintiffs working at various client sites, sufficient to enable Plaintiff and her counsel to value Plaintiff's and the Opt-in Plaintiffs' claims.

12. Plaintiff and her counsel also conducted a comprehensive investigation and evaluation of the facts and law relating to the claims asserted in the Lawsuit, including interviewing Opt-in Plaintiffs regarding their work hours, clock-in and clock-out procedures, and work performed before and after clocking in and out each shift.

13. On November 9, 2018, the parties participated in a full-day mediation with Kenneth P. Carlson, Jr., in Charlotte, North Carolina, which resulted in this Settlement Agreement.

14. In light of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, Plaintiff and her counsel believe that this Settlement Agreement is in the best interests of Plaintiff and each of the Opt-in Plaintiffs and represents a fair, reasonable, and adequate resolution of the FLSA collective claims asserted in the Lawsuit.

15. Defendant denies and continues to deny all of Plaintiff's allegations in the Lawsuit. Nonetheless, without admitting or conceding any liability or responsibility for damages, Defendant has agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing litigation.

## TERMS OF THE AGREEMENT

In consideration of the mutual promises herein contained and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1. **Definitions Used in this Agreement**:

    A. **"Administrative Costs"** means the amount to be paid to a third-party settlement administrator for all costs in connection with consummating the terms of this Agreement as set forth in Paragraph 5.

    B. **"Attorneys' Fees and Costs"** means the amount paid to Plaintiffs' Counsel from the Gross Settlement Fund pursuant to Paragraph 2(C).

    C. **"Defendant" or "G4S"** means G4S Secure Solutions (USA) Inc., named party to this Lawsuit.

    D. **"Effective Date"** means the date the Court enters an Order approving this Settlement and/or dismissing this Lawsuit.

    E. **"Final Approval Order"** means an order executed and filed by the Court granting final approval to the Settlement Agreement and dismissing the Lawsuit with prejudice.

    F. **"FLSA Collective Members"** means the 62 individuals who have filed consents to join this Lawsuit and Plaintiff Williams.

    G. **"FLSA Workweeks"** means, for post-conditional certification Opt-in Plaintiffs, the weeks worked during the period beginning three-years preceding this Court's conditional certification order, plus 5 weeks to account for the parties' tolling agreement, and

4

ending on November 9, 2018. For pre-conditional certification Opt-in Plaintiffs, including Plaintiff Alexandria Williams, FLSA Workweeks means the weeks worked during the three-year period preceding the filing of their consent to join form and ending on November 9, 2018.

    H.    "**Gross Settlement Fund**" means the amount of $ 97,000.00. This payment will cover the settlement allocations to Plaintiff and all FLSA Collective Members, attorneys' fees and costs and Administrative Costs (as defined above), such that Defendant's settlement liability, **excluding** the employer's share of payroll taxes, shall not exceed the combined sum of $ 97,000.00.

    I.    "**Named Plaintiff**" means plaintiff Alexandria Williams.

    J.    "**Net Settlement Fund**" means the Gross Settlement Fund, less Attorneys' Fees and Costs, which include Administrative Costs.

    K.    "**Plaintiffs' Counsel**" means Davis George Mook LLC and Strianese Huckert, LLP.

    L.    "**Released Claims**" means subject to the terms of this Agreement, upon entry of the Court's Final Approval Order of the Settlement Agreement, it is understood and agreed by Plaintiff Williams and each individual Opt-In Plaintiff that said individuals release Released Parties from any alleged violation of the Fair Labor Standards Act ("FLSA") regarding any "off the clock" compensable time or any other alleged violations of the FLSA alleged in the Lawsuit, with the sole exception of Plaintiff Williams' REDA claim, which is not resolved with, and for which no consideration is provided in, this Settlement Agreement. Plaintiff Williams and Opt-In Plaintiffs further release any and all claims against Released Parties that were or could have been asserted in the Lawsuit on putative violations of any federal, state or local laws pertaining to unpaid wages or compensation, based on events that occurred or are alleged to have occurred while

5

Plaintiff Williams or each individual Opt-In Plaintiff was employed by Released Parties from January 20, 2014 through the Effective Date.

M. **"Released Parties"** means Defendant, G4S Secure Solutions (USA) Inc., and its predecessors, successors, assigns, agents, directors, officers, shareholders, employees, representatives, attorneys, and parents, divisions, subsidiaries, and affiliates (and each of their predecessors, successors, assigns, agents, directors, officers, shareholders, employees, representatives, and attorneys), and all persons acting by, through, under, or in concert with any of them.

N. **"Spreadsheet"** means the spreadsheet reflecting the FLSA Workweeks and average hourly rate for each FLSA Collective Member, attached as an exhibit to this Settlement Agreement.

O. **"Individual FLSA Collective Member Share"** means the share of the Net Settlement Fund determined in accordance with Paragraph 2.B.iii of this Settlement Agreement.

2. **Settlement Fund Allocation.**

    A. <u>Settlement Fund Allocation</u>. Each FLSA Collective Member shall be allocated a share of the Net Settlement Fund.

    B. <u>Allocation of the Net Settlement Fund</u>

    (i) Each FLSA Collective Member shall be allocated the same minimum dollar amount of $250 from the Net Settlement Fund ("Minimum FLSA Collective Member Allocation") plus their "Individual FLSA Collective Member Share" (together, the "Individual FLSA Collective Member Allocation").

    (ii) The Net Settlement Fund, less the sum of each FLSA Collective Member's Minimum FLSA Collective Member Allocation, shall equal the Pro Rata Allocation Fund.

6

(iii) The Individual FLSA Collective Member Share of the Pro Rata Allocation Fund shall be determined using the following formula:

1. **Calculate Each FLSA Collective Member's Points.** For each FLSA Collective Member, multiply the Member's hourly rate reflected in the Spreadsheet by the total number of his or her FLSA Workweeks. The result is the "FLSA Collective Member's Points."

2. **Calculate "Net Share Per Point."** Add up each of the "FLSA Collective Member's Points" to determine the "Total FLSA Collective Member Points." Divide the Pro Rata Allocation Fund by the Total FLSA Collective Member Points. The result is the "Net Share Per Point."

3. **Calculate Each FLSA Collective Member's Share.** For each FLSA Collective Member, multiply the FLSA Collective Member's Points by the Net Share Per Point to determine the Individual FLSA Collective Member Share.

C. <u>Attorneys' Fees and Costs.</u> Subject to Court approval, Plaintiffs' Counsel will receive $ 35,000.00 as attorneys' fees, inclusive of costs and Administrative Costs. Any amounts allocated as attorneys' fees and costs under this paragraph, but not approved by the Court, shall be added to the Net Settlement Fund. Defendant agrees not to oppose (or have any responsibility for opposing) Plaintiff's request for attorney fees, expenses before the Court or the amounts thereof; however, in no event, shall the Court's award of attorneys' fees and costs increase the final amount Defendant pays in settlement. The Court's denial or or reduction of Plaintiff's request for attorneys' fees and costs, will not invalidate this Agreement.

D. Any amounts paid under this Agreement shall not be considered for benefit plan credit or compensation programs (401(k), pension plans, etc.).

3. <u>Release.</u> In accordance with the terms of this Agreement, the Named Plaintiff and the FLSA Collective Members (collectively, the "Releasing Parties") shall be deemed to have

7

irrevocably and unconditionally released and discharged the Released Parties with respect to the Released Claims as of the Effective Date.

4. **Approval of Settlement/Dismissal of the Lawsuit.**

   A. **Court Approval/Dismissal of Settlement.** Within thirty (30) days of the execution of this Agreement, Plaintiff will file a Settlement Approval Motion with the Court, along with a Motion to Approve the Plaintiffs' Counsels' Attorneys' Fees and Costs as described in Paragraph 2. If the Court does not enter an Approval/Dismissal Order, or decides to do so only with material modifications to the terms of this Agreement (including without limitation as to the Gross Settlement Fund Allocation set forth above), or if the Approval/Dismissal Order is reversed or vacated by an appellate court, then this Agreement shall become null and void, unless the Parties agree in writing to modify this Agreement and the Court approves this Agreement as modified. Notwithstanding the foregoing, if the Court approves the amount of the Gross Settlement Fund but determines there should be a reallocation of the distribution of the Net Settlement Fund and/or a reduction of the attorneys' fees and costs, the Agreement as so modified and approved by the Court, shall remain fully binding on the Parties.

   B. **Dismissal of Action With Prejudice.** Subject to and conditioned upon the Court's Approval/Dismissal of the Settlement in accordance with the terms and conditions of this Agreement, Plaintiffs agree that the Lawsuit shall be dismissed with prejudice, with all Parties responsible for their own costs and attorneys' fees, except as otherwise specifically provided in this Agreement.

5. **Settlement Administration and Payments.**

   A. **Settlement Administrator.** The Settlement will be administered by a third-party administrator selected by Plaintiff's Counsel ("Settlement Administrator"). Reasonable fees and expenses of the Settlement Administrator shall be deducted from Attorneys' Fees and Costs

8

as defined in Paragraph 2(C). The Settlement Administrator shall be required to agree to a reasonable "not to exceed" cap for all fees and expenses for claims administration work.

    B.    <u>Calculation of Payment Amounts for Each FLSA Collective Member</u>.

        (i)    Within ten (10) days of the Effective Date, Defendant will provide an excel spreadsheet to Plaintiffs' Counsel and the Settlement Administrator, containing a list of all 62 FLSA Collective Members, job locations (city/state) as Security Officers, social security numbers, last known mailing addresses, and last known phone numbers. Also within ten (10) days of the Effective Date, Plaintiffs' Counsel will provide a copy of the approved Settlement Agreement, including an electronic copy of the Spreadsheet, to the Settlement Administrator. The Settlement Administrator will keep all information confidential. The Parties shall provide the Settlement Administrator with all necessary cooperation, including but not limited to the execution of all documents reasonably necessary to administer the Settlement. Defendant will provide any other information to the Settlement Administrator necessary to enable it to perform the calculations described in Paragraphs 2(A)-2(B) and to obtain current contact information.

        (ii)    Within ten (10) business days of receipt of the Spreadsheet and any other information identified in the previous subparagraph, the Settlement Administrator shall calculate the settlement allocations pursuant to the formulas provided in Paragraphs 2(A)-2(B) of this Agreement, and the Settlement Administrator shall provide the calculations to Plaintiffs' Counsel and Defendant's Counsel. Plaintiffs' Counsel and Defendant's Counsel will review the calculations for accuracy and cooperate in good faith to resolve any calculation errors within five (5) business days.

    C.    <u>Funding the Settlement and Payment of Attorneys' Fees</u>. Within ten (10) days of the Effective Date, Defendant shall wire the total amount of the Gross Settlement Fund to the Settlement Administrator. Within five (5) days of receipt of the Gross Settlement Fund, the

Settlement Administrator shall wire the Attorneys' Fees and Costs, less Administrative Costs, to Plaintiffs' Counsel. The Settlement Administrator will issue Plaintiffs' Counsel one or more IRS Forms 1099 for the attorneys' fees and costs, less Administrative Costs, paid under this Agreement.

D. <u>Distribution of Settlement Payments</u>. As soon as practicable and pursuant to the settlement allocations calculated in accordance with the formulas in Paragraphs 2(A)-2(C) of this Agreement and the calculations performed pursuant to Paragraphs 5(B) of this Agreement, the Settlement Administrator shall issue the settlement checks to the Named Plaintiff and the FLSA Collective Members.

E. <u>Undeliverable Settlement Materials.</u> If materials sent to a FLSA Collective Member are returned as undeliverable, the Settlement Administrator shall promptly undertake reasonable steps to determine the FLSA Collective Member's current address and, if an additional address is located, to send the materials to the updated address.

F. <u>Unclaimed Monies.</u> Checks to FLSA Collective Members shall remain negotiable for 6 months. FLSA Collective Members who do not cash their checks within 6 months of issuance will have their checks cancelled and their check amounts shall revert back to Defendant. The release under paragraph 3 of this Agreement shall be null and void as to such Collective Members.

6. <u>Tax Treatment of Payments</u>. For individual settlement allocations as set forth in Paragraph 2(A)-2(B) above, fifty percent (50%) of the amount(s) paid to each FLSA Collective Member under this Agreement shall be reported by the Settlement Administrator as wages to the appropriate taxing authorities on a Form W-2 issued to the FLSA Collective Member with his or her taxpayer identification number, and shall be subject to deductions for applicable taxes and withholdings as required by federal, state, and local law. The remaining fifty percent (50%) of the amount(s) paid to each FLSA Collective Member will be allocated to liquidated damages, interest

10

and/or penalties and reported by the Settlement Administrator as non-wage income to the appropriate taxing authorities on a Form 1099 issued to the FLSA Collective Member. The Settlement Administrator will be responsible for issuing the appropriate W-2 and 1099 forms, and its fees and expenses in doing so shall be considered "Administrative Costs" under paragraph 1(A) of this Agreement. The Settlement Administrator will notify Defendant of its employer portion of payroll taxes, which are exclusively the responsibility of Defendant and shall be paid by Defendant separately from and in addition to the Gross Settlement Fund.

7. **Court Retains Jurisdiction To Enforce Agreement**. The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement, to the extent permitted by law, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement. Any action to enforce this Agreement shall be commenced and maintained only in this Court.

8. **Cooperation Clause**. The Parties agree to cooperate in good faith to effectuate the Settlement of the Lawsuit, including securing the Court's approval of the Agreement/dismissal of the Lawsuit, assisting with the administration of the Settlement in accordance with the terms of this Agreement, and obtaining a final judgment.

9. **Severability**. Should any clause, sentence, provision, paragraph, or part of this Agreement be adjudged by any court of competent jurisdiction, or be held by any other competent governmental authority having jurisdiction, to be illegal, invalid, or unenforceable, such judgment or holding shall not affect, impair, or invalidate the remainder of this Agreement, but shall be confined in its operation to the clause, sentence, provision, paragraph, or part of the Agreement directly involved, and the remainder of the Agreement shall remain in full force and effect.

10. **Future Inquiries**. If Plaintiff's Counsel, or their firms, receive any inquiries from Defendant's hourly, non-exempt employees, Plaintiff's Counsel shall notify Defendant's Counsel

11

of any such claims before instituting any legal proceeding. To the extent consistent with Plaintiff's Counsel's legal and ethical obligations, Plaintiff's Counsel and any client(s) will attempt to resolve any disputes individually with Defendants informally before any legal proceeding is commenced.

11. **Communications With the Media.** No Party or counsel for a Party shall issue a press release or otherwise notify or initiate communication with the media about the settlement or terms of the Settlement Agreement. If Plaintiff's Counsel or counsel for Defendant are contacted by the media, Plaintiff's Counsel and counsel for Defendant shall be permitted to respond to such inquiries by stating only that the Parties have reached a settlement agreement subject to the Court's approval or, if contacted after the issuance of the Final Approval Order, Plaintiff's Counsel and counsel for Defendant shall be permitted to respond to such inquiries by stating only that the Parties reached a settlement agreement which they believe is a fair and reasonable settlement of disputed claims.

12. **No Waiver.** The failure to enforce at any time, or for any period of time, any one or more of the terms of this Agreement shall not be a waiver of such terms or conditions. Moreover, it shall not be a waiver of such party's right thereafter to enforce each and every term and condition of this Agreement.

13. **Authority.** Each signatory on behalf of Plaintiffs and Defendant represents and warrants that such party has full authority and power to make the releases and agreements contained in this Agreement on behalf of all FLSA Collective Members. Each signatory further represents and warrants that such party has not assigned, encumbered, or in any manner transferred all or a portion of the claims covered by the releases and agreements contained herein.

14. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of

this Agreement and of signature pages by facsimile transmission or other electronic means will constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes. Signatures of the Parties transmitted by facsimile or other electronic means will be deemed to be their original signatures for any purpose whatsoever.

**ON BEHALF OF DEFENDANT**

Date: 3/18/19

By: _____

Printed Name: Kadron Blasen

Title: Managing Counsel, Litigation.

**ON BEHALF OF THE FLSA COLLECTIVE MEMBERS**

Date: 2/20/2019

By: _____

Printed Name: Alexandria Williams

Reviewed and approved as to form by counsel:

**DAVIS GEORGE MOOK LLC**

Date: 3.7.2019

By: _____
Printed Name: Tracey F. George
Attorney for Plaintiff and FLSA Collective Members

13

Date: 3/19/19

DINSMORE & SHOHL LLP

By: *Kelly Eisenlohr-Moul*
Printed Name: Kelly Eisenlohr-Moul
Attorney for Defendant

14

# EXHIBIT 1

## SPREADSHEET

| NAME | FLSA WORKWEEKS | AVG. HOURLY RATE |
|---|---|---|
| ADAM OVERCASH | 50.71 | $13.00 |
| ALASTAIR NICHOLSON | 63.86 | $13.00 |
| ALEXANDRIA WILLIAMS | 190.29 | $15.12 |
| ALLAN MORALES | 34.00 | $13.00 |
| ANDREA PATTERSON | 96.00 | $13.00 |
| ANDREW BAXTER QUINN | 29.14 | $13.00 |
| ASHLEY YOUNG | 5.71 | $13.00 |
| BRANDON MARSHALL | 1.29 | $12.00 |
| CHRIS BIECKER | 3.29 | $13.00 |
| CHRISTOPHER GILBERT | 70.57 | $13.25 |
| CLOYDE MORGAN | 15.29 | $13.00 |
| CORY WELLS | 16.86 | $12.00 |
| DALE BREIDINGER | 80.29 | $11.00 |
| DANNY TIPTON | 184.57 | $13.00 |
| DUAWN E HARPER JR | 115.86 | $13.50 |
| EDA MCGALLIARD | 126.14 | $13.25 |
| ERIK LAWRENCE | 143.14 | $13.00 |
| ETHAN B COLE | 8.71 | $13.00 |

| Name | | |
|---|---|---|
| GEORGE ISBELL | 30.29 | $13.00 |
| JACK WILSON | 85.71 | $13.75 |
| JOANN WORLEY | 137.43 | $13.00 |
| JOHNATHAN LUNSFORD | 0.00 | $10.00 |
| JOSEPH DUNN | 87.14 | $14.50 |
| JOSEPH GIRMANN | 51.43 | $10.00 |
| JOSEPH LOSCALZO | 121.29 | $17.00 |
| JOSEPH SIXT | 76.29 | $14.00 |
| JUSTIN CASTRO | 64.71 | $13.25 |
| KENNETH J KIMBERLIN | 68.14 | $13.25 |
| KAYLA RENEE BRYAN | 167.57 | $14.50 |
| KENNETH LACOURSE | 165.14 | $15.00 |
| LAKEISHA JOHNSON BROWNLEE | 96.00 | $11.00 |
| LEE LINGERFELT III | 6.57 | $13.00 |
| LINDA COSSEY | 24.14 | $13.00 |
| LISA SKARPALEZOS | 66.00 | $13.25 |
| LYMAN WILLIAMS | 76.00 | $13.00 |
| MARK GIBBS | 34.29 | $13.00 |
| MARVIN PARHAM | 0.00 | $13.00 |

| Name | Amount | Rate |
|---|---|---|
| MATTHEW FRANKLIN | 158.86 | $13.00 |
| MELVIN BOOKER | 71.57 | $13.25 |
| MICHAEL CARR | 173.71 | $13.00 |
| MICHAEL KIRBY | 45.29 | $13.00 |
| MISTY SUMNER | 202.86 | $13.00 |
| QUINTSEY DRAYTON-RODGERS | 62.14 | $12.86 |
| RALPH HARPER | 0.00 | $13.00 |
| RAYMOND L TRAVIS JR | 23.29 | $13.50 |
| REGINA BRYAN | 165.00 | $19.73 |
| RESHELLA MOORE | 51.00 | $13.00 |
| RICHARD EISENBERG | 102.86 | $14.00 |
| ROBERT CHAVIS | 32.71 | $13.00 |
| ROBERT FULLBRIGHT | 65.14 | $11.50 |
| ROBERT NAVARRO | 33.43 | $13.00 |
| SCOTT PRALEY | 64.86 | $11.50 |
| SHAWN BLACKBURN | 59.14 | $13.00 |
| SONNY HOOD | 0.00 | $13.00 |
| STANLEY ADAMS | 127.00 | $13.25 |
| STEPHANIE KISH | 125.86 | $13.25 |

| Name | | |
|---|---|---|
| SUSAN GIBBS | 45.57 | $13.00 |
| THOMAS GREEN | 125.14 | $9.25 |
| TIM CASHIN | 9.86 | $11.00 |
| TIMOTHY STEWART | 202.86 | $13.00 |
| TONIA PAYNE | 0.00 | $11.00 |
| WHITNEY NEWKIRK | 52.71 | $13.00 |